## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 18-CR-17-ADM-KMM |
| Plaintiff, | |
| v. | **AMENDED[1] REPORT AND RECOMMENDATION** |
| Cortez Maurice Crumble (1), Cedric Lamont Berry, Jr. (2), | |
| Defendants. | |

Thomas Calhoun-Lopez, United States Attorney's Office, counsel for the government

Douglas L. Micko and Douglas Olson, Office of the Federal Defender, counsel for Mr. Crumble

Robert A. Lengeling, Benito & Lengeling, PA, counsel for Mr. Berry

---

   This matter is before the Court on pretrial motions to suppress filed by the defendants, Cedric Berry and Cortez Crumble. Both Mr. Crumble and Mr. Berry have filed motions seeking to suppress eyewitness-related evidence against them. (ECF Nos. 42 & 53.) In addition, both seek to suppress evidence seized pursuant to several search warrants. (ECF Nos. 43 & 54.) The Court held an evidentiary hearing on the motions on April 10, 2018 (ECF No. 63), and received post-hearing memoranda from both defendants and from the United States. For the reasons that follow, the Court recommends that the motions be denied.

---

[1]  This Amended Report and Recommendation corrects two citations: (1) on page 3 the correct citation is *Perry v. New Hampshire*, 565 U.S. 228 (2012); and (2) on page 11 the correct citation is *United States v. Leon*, 468 U.S. 897 (1984).

## I.      Eyewitness Identification

Mr. Crumble and Mr. Berry both seek to suppress eyewitness identification evidence obtained by the government during the investigation of this case. However, both defendants appear to misapprehend the relevant analytical framework. Because the officers engaged in no pre-trial identification procedures that could give rise to concerns about suggestiveness, there is no evidence to suppress, and the defendants' motions should be denied.

### A.      Background

At around 1:00 am on November 23, 2017, police were called to the 200 Club in Minneapolis (also known as the Broadway Pub and Grill) in response to a fight followed by a shooting. Among the officers who responded to the scene were Lucas Nightengale and Officer Austin Seely, both of the Minneapolis Police Department. (Tr. at 12–13, 28, ECF No. 69.)

During the initial on-scene investigation, Officers Nightengale and Seely interviewed several witnesses, including two bouncers and a bartender. (Tr. at 15–16, 31.) At the time of this preliminary investigation, the officers had no suspects. They asked each witness open-ended questions about what he or she had observed. The officers showed the witnesses no photos or line ups. They also did not point out any suspects, and otherwise took no steps at that time to convert the initial descriptions provided by the bar's employees into the identification of any particular person.

### B.      Legal Analysis

The primary flaw with the motions to suppress eyewitness identification filed by Mr. Crumble and Mr. Berry is that they both seek to suppress evidence which the government has made clear does not exist. For this reason, as well as the general inapplicability of the jurisprudence they invoke to the circumstances they describe, their motions related to eyewitness identification must be denied.

Both Mr. Crumble and Mr. Berry invoke *Neil v. Biggers*, 409 U.S. 188 (1972), *Manson v. Brathwaite*, 432 U.S. 98 (1977), and their progeny in support of their identification-related motions. (*See, e.g.*, Berry Mem. at 3–4, ECF No. 71; Crumble Mem. at 4–5, ECF No. 70.) Those cases stand for the proposition that due process prohibits the admission into evidence of an eyewitness identification that is the fruit of improperly suggestive investigative techniques unless a trial court is persuaded that

the identification is sufficiently reliable. In *Neil v. Biggers* itself, for instance, the Court considered whether due process was violated by the introduction of an eyewitness identification that followed from a suggestive one-person live show up. The Court ultimately determined that, although the confrontation procedure used by police was unduly suggestive, the resulting identification of the defendant was nevertheless admissible because it was reliable under the totality of the circumstances. *Neil*, 409 U.S. at 198–99. Similarly, in *Manson v. Brathwaite*, the Court considered the admissibility of an eyewitness identification that followed from a single photo show-up, which was found to be both suggestive and unnecessary. 432 U.S. at 109–10. Neither of these decisions, nor any others cited by Mr. Crumble and Mr. Berry, have any bearing on the case before the Court.

During the on-scene investigation of the shooting in this case, police officers asked several witnesses to relate what had occurred and to specifically describe the people involved. The police had no suspects in mind, showed no photos, and engaged in no identification procedures whatsoever. The due process concerns that gave rise to this line of cases relate, not to imperfect descriptions of possible suspects, but exclusively to impermissibly suggestive police actions that infect the fairness of resulting identifications. In the absence of such law enforcement actions, the authority relied upon by both defendants is entirely inapposite.

Indeed, this analysis is virtually dictated by the Supreme Court's decision in *Perry v. New Hampshire*, 565 U.S. 228 (2012). The *Perry* Court rejected a criminal defendant's efforts to exclude a witness's identification of a suspect when the identification at issue was arguably unreliable but was not the result of any law enforcement conduct, let alone an unduly suggestive identification procedure. The Court expressly declined to interject judicial review of reliability as a precursor to admission of all eyewitness identifications, regardless of the involvement of the police in obtaining such identifications. "'To embrace Perry's view [that courts should screen all eyewitness testimony even in the absence of suggestive police conduct] would thus entail a vast enlargement of the reach of due process as a constraint on the admission of evidence." *Id.* at 244.

Even if this Court could consider the admissibility of an eyewitness's identification in the absence of any police suggestiveness under the due process clause, in direct contravention of *Perry*, neither Mr. Crumble nor Mr. Berry have pointed to any evidence that requires suppression. At the hearing on this matter, no

witness offered testimony that either defendant had been the subject of a positive identification by any eyewitness to the offense. Mr. Berry asserts that "nobody at the scene of the incident actually identified Berry," (Berry Mem. at 4), and Mr. Crumble echoes that sentiment by noting that the government concedes that "neither witness identified or described [Mr. Crumble] at all," (Crumble Reply at 1, ECF No. 73). In the absence of any evidence to suppress, the Court is hard-pressed to imagine how it could ever contemplate granting the relief the defendants seek.

Against this backdrop, the defendants' motions to suppress eyewitness identifications should be denied.

## II. The Search Warrants

Mr. Berry and Mr. Crumble also seek to suppress physical evidence seized and data obtained from the execution of six search warrants in this case, each of which is addressed in the following pages. For the reasons set forth below, the Court recommends that the motions be denied.

### A. Probable Cause and the Review of Search Warrants

"A magistrate judge may issue a search warrant upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place." *United States v. Skarda*, 845 F.3d 370, 376 (8th Cir. 2016). A judge must make a "'common-sense decision,'" given the totality of the circumstances reflected in the affidavit, "as to whether 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). A court reviewing a defendant's subsequent challenge to a search warrant must determine whether "there was at least a substantial basis for the magistrate's finding of probable cause." *United States v. Tellez*, 217 F.3d 547, 549 (8th Cir. 2000). The "issuing court's 'determination of probable cause should be paid great deference by reviewing courts.'" *United States v. Taylor*, 15-CR-00091 (JNE/LIB), 2015 WL 4992443, at *4 (D. Minn. Aug. 20, 2015) (quoting *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331).

### B. Search Warrants Related to Cortez Crumble

As to Mr. Crumble, the government executed four search warrants: one for his place of residence on Bryant Ave. North in Minneapolis (Ex. 1); one for information from Sprint related to his cellphone, including cell-site data (Ex. 2); one for a

Facebook Account with username "Cortez Crumblejr" (Ex. 3); and one for a Facebook Account with the username "Jrod Fto" (Ex. 4).[2]

### 1.   5124 Bryant Avenue North (Ex. 1)

On December 20, 2017, Hennepin County District Court Judge Thomas Conley signed a search warrant for a home at 5124 Bryant Ave. North in Minneapolis, based on an application and sworn affidavit submitted by Minneapolis Police Officer Adam Lepinski. In the application, Officer Lepinski described the November 23, 2017 fight at the Broadway Pub and Grill and said that security broke up the fight and the crowd was dispersed. He recounted in detail that video surveillance showed one man running to a black sedan (which "appears to be a black Lincoln Town Car") and retrieving an object before running back into the bar. This man was then removed from the bar by security, who told police that he had tried to enter with a handgun.

Officer Lepinski swore that the video then captured both the man who had been ejected and another man shooting, each with his own handgun, at a passing vehicle. The two men who were shooting then got into the Lincoln Town Car and fled the scene together. Officer Lepinski included detailed descriptions of the two suspects based on his review of the video. He also stated that he recognized several of the people involved in the fight, knowing them to be members of the 10z and 20z gangs. Officer Lepinksi is familiar with some of the customers and staff at the bar because he works as an off-duty security guard there.

Two of the people he recognized were Cedric Berry and Cortez Crumble. According to Officer Lepinski's affidavit, both Mr. Crumble and Mr. Berry are associates with the 20z gang, have a history of weapons possession, and are prohibited from possessing firearms because of previous convictions. Officer Lepinski asserted that Mr. Berry appears to be the man who ran back to the vehicle and got a handgun, later shooting at the passing car, and Mr. Crumble appears to be the other shooter.

In addition, Officer Lepinski described that he had obtained data related to Mr. Berry's cell phone, and information from the cell towers used by the phone placed him near the Broadway Pub and Grill from about 11:00 p.m. on the night of

---

[2]   The Court admitted Government's Exhibits 1-4 and 6-7 at the April 10, 2018 evidentiary hearing. These exhibits include the search warrants and the supporting applications, which have been retained by the Court. (ECF No. 63.)

the shooting until at least 1:06 a.m. the following morning, and he was in Brooklyn Park by 1:36 a.m. Officer Lepinski describes this time frame as consistent with Mr. Berry being present at the shooting and fleeing the scene in the Lincoln.

Officer Lepinski also described that a "trash pull" had been done at a residence at 3900 Girard Ave. N., which led to the discovery of a receipt from Bill's Gun Shop in Robbinsdale. Following the date and time shown on the receipt, Officer Lepinski reviewed surveillance video and observed a woman and two men enter the store within 15 seconds of each other, but not act as though they are together. The woman purchased 40 caliber ammunition, and then she and the men left within 30 seconds of each other. According to Officer Lepinski, one of the men appeared to be Mr. Berry. In addition, the ID scanner at the 200 Club showed that Mr. Crumble had been a customer of the club at some point, though it cannot show the date and time of his visit or visits.

Finally, Officer Lepinski described that Mr. Crumble was the passenger in a black Lincoln Town Car on December 19, 2017 when it was pulled over for a traffic violation. He was taken into custody and the car was searched. In it, paperwork was found with Mr. Crumble's name, a phone number, and the address of 5124 Bryant Ave. N, which is also the address on his Minnesota driver's license. In addition, officers found a brochure for Bill's Gun Range. When Mr. Crumble was interviewed, he said that he lives at the Bryant Avenue residence.

Based on this information, Office Lepinski sought permission to search the home for the gun, clothing that matched what the shooter wore, and related items.

This affidavit provided more than enough information for the reviewing judge to decide that probable cause existed that Mr. Crumble was involved in the shooting at the 200 Club several weeks before, and that evidence of that crime might be found in the Bryant Avenue home where he lived. Indeed, Officer Lepinski's statement that he recognized the shooters as Mr. Crumble and Mr. Berry, combined with cell-site data putting Mr. Berry at the right place at the relevant time and the confirmation that Mr. Crumble was a customer at the bar would be more than enough to meet the probable cause threshold even without the other investigation detailed in the affidavit.

Mr. Crumble argues that this showing is inadequate because, "at bottom, this application must rise or fall on Officer Lepinski's statement that he recognized

Mr. Crumble as a shooter in the video he watched. . . ."[3] (Crumble Mem. at 8.) Even if this were true, Officer Lepinski's observation supports probable cause, given that he personally recognized Mr. Berry and Mr. Crumble from his work as a law enforcement officer and as a security guard. Probable cause is based on the totality of the circumstances, and Officer Lepinski's statement that he recognized Mr. Crumble and Mr. Berry on the video is information that substantially buttresses the showing of probable cause in the search warrant. *United States v. Salter*, 358 F.3d 1080, 1084 (8th Cir. 2004) ("The search warrant should be viewed in its totality, as probable cause is established only if the totality of the circumstances indicate a probability of criminal activity.") (internal quotations omitted).

In addition, the court disagrees with Mr. Crumble's argument that the further investigation described in the affidavit only inculpates Mr. Berry, but is insufficient as to Mr. Crumble. Given that Officer Lepinski believed that the two men committed the crime together and left the scene together, the investigation corroborating Mr. Berry's presence at the scene circumstantially strengthens the case against Mr. Crumble as well. It is certainly more than sufficient to allow this Court to find that there was a substantial basis for the issuing judge to conclude the information cleared the probable cause threshold. *Skarda*, 845 F.3d at 376 (discussing the "fair probability" standard). The motion to suppress should be denied as to this search warrant.

### 2. Mr. Crumble's White LG Cell Phone (Ex. 2)

On January 2, 2018, Officer Lepinski sought and received a search warrant to search the contents of a white LG cell phone which was, at that time, in the custody of the police. The warrant was signed by Judge Mary Vasaly of the Hennepin County District Court.

---

[3] Essentially, Mr. Crumble challenges the sufficiency of the information that led to Officer Lepinski's conclusion that it was Mr. Crumble who had committed an offense, which is an issue often raised when a defendant challenges the legality of an arrest. Familiarity with a particular person increases the credibility of an individual's identification of that person as the suspect based on a review of video footage. *Bailey v. City of Chicago*, 779 F.3d 689, 694–95 (7th Cir. 2015) (finding that probable cause in an action challenging the legality of an arrest pursuant to 42 U.S.C. § 1983 and stating that "[t]he familiarity between the witnesses and Bailey gave credibility to their identifications and countered concerns about the quality of the video").

In the application, Officer Lepinski included the same description of the incidents at the 200 Club that are described above, and he similarly stated that he believes the two suspects to be Mr. Berry and Mr. Crumble. Officer Lepinski then described that a confidential reliable informant ("CRI") told another officer that Mr. Berry lives at 3900 Girard Ave. North with his grandmother. The CRI stated that he had seen Mr. Berry there within the last week. In addition, Officer Lepinski had seen a photo on Mr. Berry's Facebook profile of Mr. Berry standing in front of that residence.

In the same affidavit, Officer Lepinski stated that a gun had been reported stolen from a woman's purse at that address. Cedric Berry's brother, Charles Ruffin, had been named as a suspect. As part of the investigation of that theft, a different officer interviewed Karen Smith, a resident at the home who identified herself as Cedric Berry's grandmother.

Officer Lepinski described that, on December 12, 2017, the CRI gave additional information to the police about Mr. Berry, saying that Mr. Berry was in north Minneapolis, and that he possessed a handgun. Based on that tip, another officer located and stopped Mr. Berry. Although no weapon was found, the officer was able to confirm Mr. Berry's phone number and obtain the cell-site data described above, which placed Mr. Berry's phone at the 200 Club on the night of the shooting and showed movement consistent with the Lincoln Town Car fleeing the scene.

In addition, Officer Lepinski described the trash pull and the investigation at Bill's Gun Range, the identification scan at the 200 Club, the stop of the Lincoln Town Car and arrest of Mr. Crumble. During that arrest, the white LG phone that is the subject of this warrant was discovered in the seat where Mr. Crumble was riding. Mr. Crumble acknowledged that the phone belongs to him.

In addition, Officer Lepinksi describes how information obtained from Mr. Berry's Facebook page shows Mr. Berry and Mr. Crumble pictured together showing gang signs, and that Mr. Crumble was wearing distinctive jeans like those Officer Lepinski believes were shown on the surveillance video of the shooting. Those same jeans were recovered during a search of Mr. Crumble's house.

-8-

Based on all of this information, Officer Lepinski states that he believes the phone will contain data proving Mr. Crumble's involvement with the shooting.[4]

As with the warrant for Mr. Crumble's home, the facts set forth in the affidavit comprise more information than needed to establish probable cause that Mr. Crumble was a suspect in the shooting at the 200 Club. In addition, the affidavit provides sufficient probable cause to believe that the phone seized belongs to Mr. Crumble, and therefore may contain information relevant to the investigation. While it is true that the affidavit cannot definitively establish that the phone in question was used by Mr. Crumble the previous month, when the shooting occurred, that reality does not undermine probable cause that the phone might contain relevant information. *See United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008) ("Probable cause requires only a showing of fair probability, not hard certainties."). The Court recommends that the motion to suppress be denied as to the search of Mr. Crumble's cell phone.

### 3.    Facebook Account for "Cortez Crumblejr" (Ex. 3)

On December 14, 2017, Officer Jason Schmitt, a twenty-year veteran of the Minneapolis Police Department, applied for a search warrant for information from a Facebook account with username "Cortez Crumblejr." The warrant was signed the same day by Hennepin County District Judge Laurie J. Miller.

Officer Schmitt provided much of the same information set forth above regarding the fight and shooting at the 200 Club, and the identification of Mr. Berry and Mr. Crumble as the shooters. He also stated that both men are associates of the 20z gang. His affidavit further described categories of incriminating information that can be found on the Facebook profile of gang members, including photos with firearms, gang signs, narcotics activity, threats, and private messages regarding gang activity. Officer Schmitt also described the historical cell-site data placing Mr. Berry at the scene of the shooting. He stated that, through Mr. Crumble's Facebook profile, he hopes to get a phone number that officers can use to gather the same cell cite data as to Mr. Crumble.

---

[4] In addition, Officer Lepinski stated that by searching the phone he believes he can learn the phone's number, and use it to draft a secondary warrant to obtain historical cell-site data to establish whether Mr. Crumble was in vicinity of the shooting on November 23, 2017. No such warrant was introduced into evidence at the hearing, and neither side discussed it.

Officer Schmitt stated that he has "located a Facebook pages for CRUMBLE" and examined the limited public portions of these pages. Nothing but two photographs are available for public view. He also asserted that Mr. Crumble is prohibited from possessing firearms and has a history of weapons possession.

Although this affidavit contains adequate information to establish probable cause to connect Mr. Crumble to the shooting, it contains far less information establishing probable cause to believe that the Facebook page at issue belongs to Mr. Crumble. However, given that Mr. Crumble's name is quite unique, and is very close to the name on the account, the Court finds that the showing of probable cause on this point is adequate. Therefore, motion to suppress should be denied as to the evidence obtained pursuant to the search warrant for the "Cortez Crubmlejr" Facebook page.

### 4.     Facebook Account "Jrod Fto" (Ex. 4)

On January 16, 2018, Officer Schmitt sought and received a search warrant for another Facebook account. Officer Schmitt's application was signed by Hennepin County District Court Judge Charlene Hatcher. This warrant was for another Facebook account with the username "Jrod Fto." The affidavit contains much of the same information set forth in the previous Facebook application, and describes first that Mr. Crumble's Facebook username is "Cortez Crumblejr," the account discussed above. The affidavit goes on to say that the search warrant for that page revealed "limited information."

Officer Schmitt stated: "On 01/12/18 a second facebook [sic] warrant for CRUMBLE was located under the moniker name of Jrod Fto. Gang related information can be seen directly on the public portions of CRUMBLES facebook [sic] page." No other information is provided tying Mr. Crumble to the name "Jrod Fto," nor to the Facebook page at issue. No mention is made of photos on the public portions of the page that suggest it is Mr. Crumble's page. There is no other information in the affidavit specifically tying him to the page in any way.

Although this affidavit contains adequate information from which to find probable cause that Mr. Crumble was involved in the shooting at the 200 Club, and from which a judge could find that Mr. Crumble's Facebook page might contain or lead to evidence of that crime, it contains very little information connecting the "Jrod Fto" Facebook page (the place to be searched) to Mr. Crumble. In other words, the

-10-

"Jrod Fto" warrant application asserts but fails to substantiate a nexus between the contraband (evidence linking Mr. Crumble to the shooting) and the place to be searched (the Facebook account). *See United States v. Skarda*, 845 F.3d 370 (8th Cir. 2016) ("A showing of probable cause requires evidence of a nexus between the contraband and the place to be searched.") (quotation marks omitted) (quoting *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000)).

Mr. Crumble argues persuasively that this flaw undermines a finding of probable cause. (Crumble Reply at 1–2.) He notes that the bald assertion that the Jrod Fto page belongs to Mr. Crumble is not only unsupported with evidence, but is contradicted by the fact that a different Facebook pages was tied to Mr. Crumble, a page with Mr. Crumble's name attached. The government fails to address the nexus issue in any real way, simply lumping this warrant in with the others and asserting, without specifics, that it is based on probable cause or, at a minimum, saved by the *Leon* good-faith exception. The government offers no individual discussion whatsoever of the content of the Jrod Fto warrant, cites no caselaw, and offers no analysis. Ultimately, although the Court agrees with Mr. Crumble that the warrant affidavit does very little to support its claim that Jrod Fto is a second page belonging to Mr. Crumble, the Court cannot recommend suppression on that basis.

At the outset, the Court observes that the information contained in the application regarding the Jrod Fto page is unclear at best. Officer Schmitt describes that a "second facebook [sic] warrant" for Mr. Crumble was found, but it appears that he means to say that a second Facebook *page* or second Facebook *username* was found. However, despite an invitation from Mr. Crumble to read this sentence as incomprehensible, the Court believes that its typographical and grammatical errors do not obscure the meaning entirely. Office Schmitt asserts that the page he is seeking permission to explore belongs to Mr. Crumble. The problem is less that this conclusion was poorly drafted and more that it was not substantiated.

More importantly, even though the Court finds Mr. Crumble's argument regarding probable cause persuasive, under *United States v. Leon*, 468 U.S. 897 (1984), and its progeny, the Court concludes that suppression of the evidence obtained pursuant to this warrant is not appropriate. *Leon* established the so-called good-faith exception to the exclusionary rule. Under this exception, a reviewing court asks whether it was "objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause

to issue the warrant." *United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007) (citing *United States v. Leon,* 468 U.S. 897 (1984)). Although this exception entitles officers to rely in good faith on the issuance of a warrant, suppression will still be an appropriate remedy in a few circumstances. One such circumstance is where "the [issuing] magistrate was misled by information in an affidavit the affiant knew was false or would have known was false except for his reckless disregard for the truth." *Leon*, 468 U.S. at 923. In addition, "suppression remains an appropriate remedy where 'the issuing magistrate wholly abandoned his judicial role.'" *United States v. Carpenter*, 341 F.3d 666, 670 (8th Cir. 2003) (quoting *Leon*, 468 U.S. at 923). And another situation where suppression may be appropriate is "[w]here a warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable* [such that] an officer cannot manifest objective good faith in relying on [the] warrant." *Id.* (internal quotations omitted) (emphasis in *Carpenter*).

Mr. Crumble does not argue that the warrant application included false statements or that the issuing judge wholly abandoned her judicial role in issuing the Jrod Fto warrant. Instead, Mr. Crumble asserts that "no reasonable officer could conclude [that the Jrod Fto warrant application] established probable cause to search the page for evidence related to Mr. Crumble." (Crumble Reply at 2.)

The Court concludes that the identified flaw in the Jrod Fto warrant application—that it insufficiently substantiates Officer Lepinski's claim that the Facebook page belongs to Mr. Crumble—is not so glaring that an officer's belief in the existence of probable cause for the search was entirely unreasonable. The problem for Mr. Crumble is that "entirely unreasonable" is a "particularly strong choice of words" chosen by the Supreme Court and given its full force by the Eighth Circuit. *Carpenter*, 341 F.3d at 670 (describing the high bar that must be cleared to demonstrate that an officer's reliance on a warrant was entirely unreasonable due to the absence of probable cause). Moreover, "'[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.'" *United States v. Houston*, 665 F.3d 991, 996 (8th Cir. 2012) (quoting *Leon*, 468 U.S. at 921).

The Jrod Fto warrant application is imperfect and, frankly, sloppy. However, within its four corners are Officer Schmitt's attestations that Mr. Crumble was involved in a crime, was connected to gang activity, used one Facebook page bearing the name "Cortez Crumblejr," and that another Facebook page with publicly visible

-12-

gang-related information belonged to Mr. Crumble. With this information and the signed warrant, it was not entirely unreasonable for Officer Schmitt to believe that the issuing judge inferred there was a sufficient nexus between Mr. Crumble and the place to be searched—*i.e.*, the Jrod Fto account. *Cf. Carpenter*, 341 F.3d at 671–72 (concluding that even where the warrant did not present facts to indicate the existence of a nexus between the place to be searched and the contraband, it was not entirely unreasonable for an officer executing the to believe the "common sense" inference was permissible that that evidence of contraband would be stored there); *Houston*, 665 F.3d at 995 ("Although there must be evidence of a nexus between the contraband and the place to be search before a warrant may properly issue, . . . we have held that an officer executing a search warrant may rely [o]n the permissibility of the issuing judge's inference that such a nexus exists when that inference has common sense appeal.") (internal quotations and citations omitted).

For these reasons, the Court concludes that suppression of the evidence obtained pursuant to the Jrod Fto warrant should not be suppressed.

### C. Search Warrants Related to Cedric Berry

As to Mr. Berry, the government executed a search warrant at his home, which is not the subject of the motion to suppress (Tr. at 11), and two that are: one for information related to his cellphone (Ex. 6); and one for a Facebook account with user name "Cedric Kickadoeberry (Ex. 7).

#### 1. Cell Phone Records and Historical Cell-Site Data

On December 13, 2017, Officer Lepinski applied for a warrant to obtain information from Sprint related to cell phone number (612) 559-9494, a phone he alleged belonged to Mr. Berry. The warrant was granted the same day by a Hennepin County District Court Judge.

In the application, Officer Lepinski includes much of the same information as the affidavits described above regarding the events at the 200 Club. However, instead of stating that he recognized Mr. Berry and Mr. Crumble as the shooters specifically, Officer Lepinski stated that he recognized several individuals in the fight that precipitated the shooting, and that Mr. Berry and Mr. Crumble were two of those

-13-

individuals.[5]  Officer Lepinski also stated that they are both associates of the 20z gang, both prohibited persons, and both have a history of weapons possession.

The affidavit goes on to say that on December 13, 2017, the police received information from a confidential reliable informant about Mr. Berry being "in possession of a handgun at a particular location in north Minneapolis."  Officers went to the area and located Mr. Berry, but "were unable to locate the handgun."  During the stop, they confirmed that Mr. Berry had a cell phone with him at that time, with number (612) 559-9494.

Officer Lepinski described his belief that information related to cell phones generally would provide "GPS tracking and historical cell site locations" that might show "whether a particular phone was in a specific location at any given time."  The officer specified that he was seeking that information related to Mr. Berry's phone so that he could establish whether Mr. Berry was in the area of the shooting at the 200 Club on November 23, 2017.  He also believed that the cell phone data would also show call and text information to identify other suspects or witnesses at the scene.

This case presents a close call as to whether the affidavit sets forth adequate probable cause to believe that Mr. Berry's cell phone would contain evidence related to the shooting at the 200 Club.  Although the affidavit shows that Mr. Berry was likely involved in the fight at the bar that led to the shooting, that a reliable informant believed he possessed a gun several weeks later, and that he has a history of gun possession, it offers no evidence that Mr. Berry was one of the two shooters.  Arguably, it is not enough for Mr. Berry to merely have been at the scene of the shooting and involved in a physical altercation to establish probable cause that he was one of the shooters.  *See, e.g.*, *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person.").

However, the application does not seek a search warrant for Mr. Berry's phone solely on the basis of the suggestion that he was a shooter, but also because his phone

---

[5]     Mr. Berry argues that the affidavit only states that the officer recognized Mr. Berry and Mr. Crumble as being at the bar, rather than being involved in the fight (Berry Mem. at 5), and it is true that the drafting on this point is somewhat unclear.  However, the most logical reading of the paragraph at issue is that the officer recognized Mr. Berry and Mr. Crumble as having been participants in the fight.

could confirm his location at the time of and immediately after the shooting – when the suspects were fleeing. The phone's texts and call log could also lead to other "suspects or witnesses" at the scene. The affidavit's information is likely adequate to satisfy the "common sense" threshold regarding "whether there is a fair probability that contraband *or evidence of a crime* will be found in a particular place." *United States v. Skarda*, 845 F.3d 370, 376 (8th Cir. 2016) (emphasis added) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983). This is particularly true because a reviewing court must give deference to an issuing judge's determination of probable cause. *Illinois v. Gates*, 462 U.S. at 236.

The Court need not definitively resolve the somewhat difficult question of whether the search warrant affidavit establishes probable cause for the information related to Mr. Berry's cell phone. Even if probable cause was lacking, Mr. Berry's motion to suppress should still be denied under the *Leon* good-faith exception. As noted above, this exception asks whether it was "objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." *United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007) (citing *Leon,* 468 U.S. at 923). Mr. Berry does not argue that the warrant applications included false statements or that the issuing judge "wholly abandoned his judicial role in issuing the warrant," either of which would take the case outside of the protections of *Leon*. *United States v. Perry*, 531 F.3d 663, 665 (8th Cir. 2008). And here, though it is not the strongest showing, the warrant was based on sufficient probable cause such that Officer Lepinski's belief in its validity was not "entirely unreasonable." *Id.* This Court readily concludes that the warrant was not so flawed that Officer Lepinski's belief in its validity was "entirely unreasonable." *Leon*, 468 U.S. at 923.

Because the good-faith exception precludes the suppression Mr. Berry seeks, the Court recommends denial of the motion to suppress as to the warrant for historical cell-site data.

### 2. Mr. Berry's Facebook Page (Ex. 7)

On December 14, 2017, Officer Schmitt applied for a warrant to obtain information from Facebook regarding the account of username "Cedric Kickadoeberry." That warrant was granted on the same day by Hennepin County Judge Laurie Miller.

The information contained in this affidavit is virtually identical to the information provided in the warrant for information related to the first page identified as belonging to Mr. Crumble (Ex. 3), which is described above.  In seeking permission to search the "Cedric Kickadoeberry" account, Officer Lepinski describes the page as belonging to Mr. Berry, and states that he viewed the public portions of the page.  He observed that Mr. Berry is Facebook friends with at least one person seen on the surveillance video of the shooting at the Club.  Most importantly, he saw "several profile photographs of BERRY flashing gang hand signs."

These facts taken together establish probable cause that the Facebook page belongs to Mr. Berry and that it could contain evidence of the crime being investigated.  The Court recommends that the motion to suppress be denied as to the search warrant for the "Cedric Kicakdoeberry" Facebook account.

### III.   Recommendation

Based on the foregoing, the Court recommends that the motions to suppress filed by Mr. Berry and Mr. Crumble **(ECF Nos. 42, 43, 53 & 54)** be **DENIED**.

Date: June 14, 2018                                      *s/Katherine Menendez*
                                                         Katherine Menendez
                                                         United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.