# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.

**MEMORANDUM OPINION AND ORDER**
Criminal No. 18-17(1) ADM/KMM

Cortez Maurice Crumble,

        Defendant.

___

Thomas Calhoun-Lopez, Assistant United States Attorney, United States Attorney's Office, Minneapolis, MN, on behalf of Plaintiff.

Douglas L. Micko and Douglas Olson, Assistant Federal Defenders, Office of the Federal Defender, Minneapolis, MN, on behalf of Defendant.

___

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Cortez Maurice Crumble's ("Crumble") Objection [Docket No. 82] to Magistrate Judge Katherine M. Menendez's June 14, 2018 Amended Report and Recommendation [Docket No. 75] ("R&R").[1] In the R&R, Judge Menendez recommends denying Crumble's Motion to Suppress Eyewitness Identifications [Docket No. 42] and Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 43]. For the reasons set forth below, Crumble's Objection is overruled and Judge Menendez's R&R is adopted.

## II. BACKGROUND

### A. Events at the 200 Club

In the early morning of November 23, 2017, police were called to the 200 Club in

___

[1] The Amended R&R corrected two citations to the June 13, 2018 R&R [Docket No. 74].

Minneapolis to respond to reports of a shooting. Tr. [Docket No. 69] 14:19–15:5. Minneapolis Police Officers Lucas Nightengale ("Officer Nightengale") and Austin Seely ("Officer Seely") were two of the responding officers. Id. 15:10–18; 29:22–23. After looking for discharged shell casings, Officers Nightengale and Seely interviewed several witnesses, including two bouncers and a bartender. Id. 15:10–24; 31:6–7. Officer Seely was told by one of the bouncers that he recalled observing a man leave the bar shortly after a fight inside the bar had been broken up. Id. 16:8–13. The bartender told Officer Nightengale he recalled observing a man holding a handgun enter the bar shortly after the fight ended. Id. 32:9–22. The bartender related that this individual's attempt to enter the bar was prevented by bar security, and that the individual was forced back outside. Id. 33:5–7. Officer Nightengale then spoke with the second bouncer who told Officer Nightengale that he was working the front door of the bar when a man with a possible gunshot wound on his leg tried to enter. Id. 34:5–18. He told Officer Nightengale that he helped the man back outside shortly before the fight started inside the bar. Id. 34:24–25. None of the witnesses Officers Seely or Nightengale spoke with actually observed the shooting. Id. 20:13–15; 40:4–8.

Following the shooting, Minneapolis Police officers obtained four search warrants in their investigation of Crumble. The warrants authorized police to search: 1) a residence on Bryant Avenue North; 2) an LG cell phone; 3) a Facebook account for the username Cortez Crumblejr; and 4) a Facebook account for the username Jrod Fto.[2]

---

[2] Because Crumble does not object to the R&R's conclusion that the search warrant for the Cortez Crumblejr Facebook account was supported by probable cause, it will not be discussed here.

**B. The Search Warrants**

    **1. Bryant Avenue North Search Warrant**

On December 20, 2017, a search warrant was obtained for 5124 Bryant Avenue North in Minneapolis. The affiant on the warrant application was Minneapolis Police Officer Adam Lepinski ("Officer Lepinski"), who was investigating the November 23, 2017 shooting at the 200 Club. In the search warrant application, Officer Lepinski stated that he had reviewed the 200 Club's security video from the night of the shooting. The video showed several men involved in a fight inside the bar. After bar security intervened, one of the men involved in the fight is shown on the video exiting the bar and retrieving an object from what appears to be a black Lincoln Towncar before running back into the bar. Bar security reported that when that individual returned inside the bar he was restrained and ejected for possessing a handgun, which was likely the object retrieved from the car.

Exterior cameras also showed another man that was involved in the fight inside the bar. The cameras recorded these two men each firing a handgun at a vehicle passing through the bar's parking lot before fleeing the scene together in the same black Lincoln Towncar where a firearm was likely retrieved. Officer Lepinski stated in the affidavit that because the two men left the scene in the same vehicle, it was likely that they knew each other.

The affidavit also included a description of the physical appearance of the two men. Officer Lepinski stated that he recognized several of the people involved in the fight as members of the 10z and 20z gangs, and that he is familiar with staff and customers of the 200 Club because he works there as an off-duty security guard.

Two of the individuals Officer Lepinski recognized were Cedric Berry ("Berry") and

3

Crumble. Officer Lepinski stated that Berry appears to be the individual in the video who attempted to enter the bar with a handgun, and Crumble appears to be the other man shooting at the passing vehicle. Officer Lepinski has knowledge that both Berry and Crumble are prohibited from possessing firearms.

The search warrant application also included additional evidence linking Crumble to the shooting at the 200 Club. First, Officer Lepinski stated that Berry's cell phone records showed him as being at the 200 Club during the time of the fight and shooting, and that the 200 Club's ID scanner confirmed that Crumble had been a customer at the bar.

Officer Lepinski also stated that officers searching trash bags from a residence at 3900 Girard Ave. N. discovered a receipt from Bill's Gun Shop in Robbinsdale, Minnesota. The receipt showed that a box of .40 caliber handgun ammunition was purchased on December 11, 2017 at 3:53 p.m. The discharged cartridge casings discovered outside the 200 Club were also .40 caliber.

Officer Lepinski and another Minneapolis officer went to Bill's Gun Shop and reviewed the store's video surveillance at the time printed on the receipt. The video showed an unidentified woman enter the store followed by two men approximately 10 to 15 seconds later. One of the men appears to be Berry. The unidentified woman can be seen purchasing the .40 caliber ammunition and leaving, and the two men leave roughly 30 seconds later. Officer Lepinski stated in the search warrant affidavit that the woman and men appear to be together based on their arrival and departure behavior.

Officer Lepinski additionally described a December 19, 2017 traffic stop of a black Lincoln Towncar. The front seat passenger was identified as Crumble. Paperwork found inside

4

the car named Crumble and listed an address of 5124 Bryant Avenue North, which is consistent with Crumble's Minnesota driver's license. A flyer for Bill's Gun Range was also discovered in the car. Finally, Officer Lepinski stated that during an interview at the county jail, Crumble told the interviewing officer that his address was 5124 Bryant Avenue North.

Based on this information, Officer Lepinski received a warrant to search 5124 Bryant Avenue North for firearms, ammunition, clothing matching what the shooter wore, and related items.

**2. LG Cell Phone**

On January 2, 2018, Officer Lepinski received a warrant to search electronically stored data on an LG cell phone that was seized as evidence during the December 19, 2017 traffic stop described above. In the warrant application, Officer Lepinski included all of the information provided in the 5124 Bryant Avenue North warrant application. This warrant application also described a photograph showing Berry and Crumble displaying gang hand signs. In the photograph, Crumble appears to be wearing the same distinctive jeans as shown in the video on the night the shooting occurred. These same jeans were discovered during the search of Crumble's residence at 5124 Bryant Avenue North.[3]

**3. Jrod Fto Facebook Account**

On January 16, 2018, Officer Jason Schmitt ("Officer Schmitt") received a warrant to search for electronic information connected to a Facebook account with the username "Jrod Fto." In the warrant application, Officer Schmitt included much of the same information concerning

---

[3] Additional information concerning Berry was also included in the search warrant application.

the shooting at the 200 Club. The application also referenced a search of a Facebook account with the username "Cortez Crumblejr" that "returned with limited information gained." Officer Schmitt further stated that a second Facebook "warrant for CRUMBLE was located under the moniker name of Jrod Fto. Gang related information can be seen directly on the public portions of CRUMBLES facebook page."

**C. The R&R**

Crumble sought to suppress evidence seized as a result of the search warrants discussed above.[4] The R&R concludes that the warrants for the Bryant Avenue North residence and the LG cell phone were supported by probable cause.

As to the warrant for the Jrod Fto Facebook account, the R&R stated that the affidavit includes "very little information connecting the 'Jrod Fto' Facebook page (the place to be searched) to Mr. Crumble. In other words, the 'Jrod Fto' warrant application asserts but fails to substantiate a nexus between the contraband (evidence linking Mr. Crumble to the shooting) and the place to be searched (the Facebook account)." R&R at 10–11. Despite this flaw, the R&R recommends denying the request to suppress this evidence, concluding that under the good-faith exception of <u>United States v. Leon</u>, 468 U.S. 897 (1984), and its progeny, "the identified flaw in the Jrod Fto warrant application . . . is not so glaring that an officer's belief in the existence of probable cause for the search was entirely unreasonable." R&R at 12. Thus, the R&R recommends denying suppression of the information obtained through the search of the Jrod Fto Facebook account.

---

[4] Crumble also sought to suppress identifying statements obtained by officers while responding to the 200 Club. This request was denied, and Crumble does not object.

Crumble Objects to the R&R's recommendation that the warrants for the Bryant Avenue North residence and the LG cell phone are supported by probable cause. Crumble also objects to the R&R's conclusion that the good-faith exception makes admissible evidence obtained from the Jrod Fto Facebook account.

## III. DISCUSSION

### A. Standard of Review

"A district judge may refer to a magistrate judge for recommendation a defendant's motion to dismiss or quash an indictment or information, a motion to suppress evidence, or any matter that may dispose of a charge or defense." Fed. R. Crim. P. 59(b)(1). In reviewing a magistrate judge's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); see also D. Minn. L.R. 72.2(b). A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

### B. Probable Cause

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. The Eighth Circuit has held that "[a]n affidavit for a search warrant need only show facts sufficient to support a finding of probable cause." United States v. Parker, 836 F.2d 1080, 1083 (8th Cir. 1987). Probable cause exists when "a practical, common-sense" evaluation of "all the circumstances set forth in the affidavit" demonstrates "a fair probability that contraband or

7

evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Gates, 462 U.S. at 231). "The existence of probable cause depends on whether, in the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (quoting United States v. Murphy, 69 F.3d 237, 240 (8th Cir. 1995)).

"A magistrate's determination of probable cause should be paid great deference by reviewing courts." Gates, 462 U.S. at 236 (quotation marks omitted). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for . . . conclud[ing] that probable cause existed." Id. at 238–39 (quotation marks omitted, alteration in original).

## C. Warrant for the Bryant Avenue North Residence

Crumble's primary argument challenging the Bryant Avenue North search warrant is that the warrant application overwhelmingly is directed toward Berry, and Crumble is linked merely by his association with Berry. Thus, Crumble argues, the legality of the warrant must rise or fall solely on Officer Lepinski's statement that he recognized Crumble as one of the shooters at the 200 Club.

However, the linkage of Crumble to the information in the warrant is more than the identification by Officer Lepinski. In the warrant application, Officer Lepinski described a shooting that involved two shooters. Officer Lepinski further stated that .40 caliber casings were found at the scene of the shooting, that Berry was observed on surveillance video from Bill's

8

Gun Shop with a woman that purchased .40 caliber handgun ammunition, and that a flyer for Bill's Gun Range was located in a vehicle registered to Crumble.[5] The warrant application also described several people in the surveillance video as being members of a gang, and that the two shooters left the scene in a car that appears to to be the same car Crumble was in as a passenger when it was later stopped by law enforcement.

"Judges 'may draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant.'" United States v. Wallace, 550 F.3d 729, 732 (8th Cir. 2008) (quoting United States v. Thompson, 210 F.3d 855, 860 (8th Cir. 2000)). Here, the totality of the circumstances described in the warrant application shows a connection between Berry, Crumble, and the shooting beyond Officer Lepinski's recognition of Crumble. The search warrant for the Bryant Avenue North residence was supported by probable cause.

## D. Warrant for the LG Cell Phone

Crumble argues that the warrant application for the LG cell phone fails because there is little information linking the cell phone to the November 23, 2017 shooting at the 200 Club. This argument is unpersuasive.

As noted in the R&R, "[p]robable cause requires only a showing of fair probability, not hard certainties." United States v. Hudspeth, 525 F.3d 667, 676 (8th Cir. 2008). Given the ubiquity of cellular telephones in the modern digital age, it is reasonable to expect Crumble to be in possession of his cell phone when the shooting occurred. It is also reasonable to suspect that

---

[5] Additionally, bar records confirm that Crumble had been at the 200 Club at some point prior to December 15, 2017.

evidence of criminality may be electronically stored on his cell phone, especially given Officer Lepinski's statement that Crumble is associated with a known gang. Cf Riley v. California, 134 S. Ct. 2473, 2493 (2014) ("Cell phones have become important tools in facilitating coordination and communication among members of criminal enterprises, and can provide valuable incriminating information.").

The search warrant for the LG phone was supported by probable cause. Crumble's objection is overruled.

**E. Warrant for the Jrod Fto Facebook Account**

The R&R concludes that, although the warrant application for the Jrod Fto Facebook account lacked probable cause connecting Crumble to the Facebook account in question, the flaw in the warrant application "is not so glaring that an officer's belief in the existence of probable cause for the search was entirely unreasonable." R&R at 12. Crumble objects to this conclusion, arguing that because there is no link between the Jrod Fto Facebook account and Crumble, no reasonable officer could conclude that it established probable cause to search the Jrod Fto Facebook account for evidence related to Crumble.

In Leon, the Supreme Court recognized that an "exception to the exclusionary rule occurs 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope,' even if the warrant is subsequently invalidated." United States v. Cannon, 703 F.3d 407, 412 (8th Cir. 2013) (quoting Leon, 468 U.S. at 920–21). The assessment of whether an officer acted in good faith on the validity of the warrant looks at "the totality of the circumstances, including any information known to the officer but not presented to the issuing judge." United States v. Jackson, 784 F.3d 1227, 1231 (8th Cir. 2015). This

10

exception does not apply in four circumstances, one of which is "when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid." Leon, 468 U.S. at 923.

The R&R's criticism of the warrant application's failure to sufficiently link Crumble to the Jrod Fto Facebook account is correect. However, the warrant application is not so deficient that it would have been entirely unreasonable for Officer Schmitt to presume its validity. As discussed in the R&R, the application includes Officer Schmitt's assertions that Crumble is believed to be involved in a shooting at the 200 Club, that he is prohibited from possessing firearms, that he is connected to gang activity, and that another Facebook page belonging to Crumble publicly displayed gang-related activity.[6] While it is problematic that there is a lack of information describing how the Jrod Fto Facebook account is connected to Crumble, the Court agrees with the R&R's conclusion that, with the information included in the warrant application and the signed warrant itself, "it was not entirely unreasonable for Officer Schmitt to believe that the issuing judge inferred there was a sufficient nexus between Mr. Crumble and the place to be searched." R&R at 13 (citing United States v. Carpenter, 341 F.3d 666, 671–72 (8th Cir. 2003)). Crumble's objection is overruled.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS**

---

[6] Crumble argues in his objection that it was unreasonable for Judge Menendez to interpret the phrase "a second facebook warrant for CRUMBLE was located" in the warrant application as meaning that a second Facebook "page" or "username" for Crumble had been discovered. Obj. at 5–6. The Court agrees with the R&R's assessment that the warrant application's "typographical and grammatical errors do not obscure the meaning entirely." R&R at 11.

**HEREBY ORDERED** that:

1. Defendant Cortez Maurice Crumble's Objection [Docket No. 82] to Magistrate Katherine M. Menendez's June 14, 2018 Amended Report and Recommendation [Docket No. 75] is **OVERRULED**;

2. The Amended Report and Recommendation [Docket No. 75] is **ADOPTED**;

3. Cortez Maurice Crumble's Motion to Suppress Eyewitness Identifications [Docket No. 42] and Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 43] are **DENIED**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 31, 2018